[Crim. No. 20550. Aug. 16, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
FREDDIE DALTON, Defendant and Appellant.

852

**COUNSEL**

Quin Denvir and Paul Halvonik, State Public Defenders, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State

Public Defender, B. E. Bergesen III, Michael G. Millman, Philip A. Schnayerson and Gail R. Weinheimer, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Robert H. Philibosian and Jack R. Winkler, Chief Assistant Attorneys General, Robert R. Granucci and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

Joseph Freitas, Jr., District Attorney (San Francisco), Daniel H. Weinstein, Chief Assistant District Attorney, John J. O'Brien and Carol M. Hehmeyer, Assistant District Attorneys, as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**BIRD, C. J.**—This court must decide whether the warrantless search of closed boxes in the trunk of a car was lawful after the driver was under arrest and handcuffed.

I

Around 2:30 p.m. on March 4, 1976, Officer Ellis of the California Highway Patrol observed a white Cadillac bearing Arizona license plates proceeding about 65 miles per hour southbound on Highway 280. He followed the car a short distance and signalled the driver to stop. The Cadillac left the freeway and stopped.

Appellant, the driver, stepped out of the car. Officer Ellis noticed two knives in his belt. When appellant was unable to produce any identification or vehicle registration, the officer requested and received the driver's license of appellant's passenger. A backup unit was requested and Officer Peterson arrived three or four minutes later. While questioning the passenger, Officer Peterson saw what he believed to be the butt of a gun wedged between the seat and an armrest that bisected the front seat. The gun was removed. Appellant and his passenger were arrested for carrying a concealed weapon in a vehicle (Pen. Code, § 12025, subd. (a)), and both were placed in handcuffs and seated on the curb until transported to the police station.

The officers radioed for assistance because they suspected the vehicle might be stolen. Officer Hertogs responded. Another officer, who happened to be passing by, also stopped. Officer Hertogs ascertained that the identification number on the engine of the car was the same as the number on the car's frame, but not the same as the number on the car's doorplate. A further check revealed that the vehicle associated with one of those numbers was possibly stolen.

The passenger was informed that she and appellant would be transported to the police station and she was asked if she wanted anything from the car. She requested the suitcase and a box of Pampers. Unable to find them in the passenger compartment, Hertogs was told by the passenger that they were in the car's trunk. He opened the trunk with a screwdriver because the trunk lock was "punched."

Inside he observed two empty shoulder holsters, two suitcases, a box of Pampers, a large silver colored metal box and various tools. Since only one weapon had been located inside the car, the officer began to search for another weapon to go with the second shoulder holster. One suitcase and a box of Pampers were removed, and a brown leather box was found beneath the suitcase. On the top was written "Longines, the world's most honored watch." Officer Hertogs opened the box and found a disassembled sawed-off shotgun. Next to the leather box was a silver-gray metal box. Hertogs removed it and opened it with a screwdriver. Inside were plastic bags with a white powder subsequently identified as amphetamine, a small caliber revolver, some small packets containing a brown powder later identified as heroin, and narcotics paraphernalia. The suitcases were also searched, but they contained no contraband.

The highway patrol officers radioed the San Francisco Police Department for assistance and an officer from the narcotics detail arrived. The large metal toolbox was removed from the car and its padlock hammered off. Inside were packets of the white powder, mortar and pestle, a scale, a grinder, and plastic bags. Appellant and his passenger were transported to the police station and charged with possession of controlled substances for sale (Health & Saf. Code, §§ 11378, 11351), auto theft (Veh. Code, § 10851) and various weapon offenses (Pen. Code, §§ 12020, 12021, 12025, subd. (a)).

A motion to suppress was made and denied at the preliminary hearing. Neither appellant nor his codefendant testified. That motion was renewed in superior court based on the transcript of the preliminary hearing.

Following its denial, appellant pled guilty to possession of heroin for sale and auto theft.[1] This appeal followed.

## II

This court must decide whether a warrantless search may be made in the field of closed personal effects found in the trunk of a car when the car's occupants have been taken into custody.

■ The Fourth Amendment guarantees individuals privacy in their persons, homes, papers and effects against unreasonable searches and seizures. In addition, it protects against searches conducted without a judicially issued search warrant. As the Supreme Court has recently stated, "In the ordinary case, therefore, a search of private property must be both reasonable and performed pursuant to a properly issued search warrant. The mere reasonableness of a search, assessed in the light of the surrounding circumstances, is not a substitute for the judicial warrant required under the Fourth Amendment." (*Arkansas* v. *Sanders* (1979)—U.S.—, — [61 L.Ed.2d 235, 241, 99 S.Ct. 2586].)

■ The high court has repeatedly held that warrantless searches are per se unreasonable under the Fourth Amendment, subject only to a few carefully circumscribed and jealously guarded exceptions. (*Jones* v. *United States* (1958) 357 U.S. 493, 498-499 [2 L.Ed.2d 1514, 1518-1519, 78 S.Ct. 1253]; *Katz* v. *United States* (1967) 389 U.S. 347, 357 [19 L.Ed.2d 576, 585, 88 S.Ct. 507]; *Mincey* v. *Arizona* (1978) 437 U.S. 385, 390 [57 L.Ed.2d 290, 298-299, 98 S.Ct. 2408]; *Arkansas* v. *Sanders, supra,* —U.S. at p. — [61 L.Ed.2d at pp. 241-242].) If the warrantless search of the boxes found in the trunk of the car is to be upheld, it is the state's burden to show that the search falls within one of those exceptions. (*McDonald* v. *United States* (1948) 335 U.S. 451, 456 [93 L.Ed. 153, 158-159, 69 S.Ct. 191]; *Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23].)

Respondent contends that neither appellant nor his passenger had any protectible privacy interest in the boxes because they were in the trunk of a stolen automobile. ■ A warrantless search of closed containers found within an automobile involves considerations separate from those

---

[1]Appellant also pled guilty to a consolidated charge, possession of a concealable firearm by one who has been convicted of a felony. (Pen. Code, § 12021.) That conviction is not involved in this appeal.

involved in a warrantless search of the interior of the automobile, and it must be justified by some recognized exception to the warrant requirement. (*Arkansas* v. *Sanders, supra,* —U.S. at p. — [61 L.Ed.2d at pp. 244-245]; *People* v. *Minjares* (1979) 24 Cal.3d 410, 423 [153 Cal.Rptr. 224, 591 P.2d 514]; see also *United States* v. *Chadwick* (1977) 433 U.S. 1, 15·[53 L.Ed.2d 538, 550-551, 97 S.Ct. 2476].)

The considerations involved in a search of closed personal effects were explored in *United States* v. *Chadwick, supra,* 433 U.S. 1. In *Chadwick* the Supreme Court held invalid a delayed warrantless search of luggage, believed to contain contraband, which was removed from an automobile. The court noted that at the time of the search the luggage had come under the exclusive control of federal agents since the suspects had been placed in custody. Therefore, the search could not be characterized as incident to an arrest. (*Id.,* at p. 15 [53 L.Ed.2d at pp. 550-551].)

The court emphasized that individuals have a greater privacy interest in the contents of closed luggage than in the interior of an automobile. It went on to note that luggage is easier to secure while seeking to obtain a warrant than is an automobile. (*Id.,* at p. 13, fn. 7 [53 L.Ed.2d at p. 550].) *Chadwick* held that once luggage comes under the exclusive control of law enforcement officers, a warrantless search is permissible under the federal Constitution only if both probable cause and actual exigent circumstances are present. (*Id.,* at pp. 15-16 [53 L.Ed.2d at pp. 550-551].)

In *People* v. *Minjares, supra,* 24 Cal.3d 410, 423, this court applied the reasoning of *Chadwick* and held that luggage, found in an automobile which was at the stationhouse and in the exclusive control of police, may not be searched without a warrant absent exigent circumstances. Subsequent to this court's decision in *Minjares,* the Supreme Court held in *Arkansas* v. *Sanders, supra,* —U.S.— [61 L.Ed.2d 235] that a warrant is also required to search luggage when it is removed from an automobile in the field. (—U.S. at p. — [61 L.Ed.2d pp. 244-245].) Paralleling this court's reasoning in *Minjares,* the Supreme Court in *Sanders* reiterated the distinctions drawn in *Chadwick*—that individuals have a greater privacy interest in closed luggage and that luggage, by its nature, may be more easily reduced to the control of police. "[A]s we noted in *Chadwick,* the exigency of mobility must be assessed at the point immediately before the search—after the police have seized the object to be searched and have it securely under their control. See 433 U.S., at 13. Once police have seized a suitcase, as they did here, the extent of its mobility is in no way affected by the place from which it was taken. Accordingly, as a general

rule there is no greater need for warrantless searches of luggage taken from automobiles than of luggage taken from other places." (—U.S. at p. — [61 L.Ed.2d pp. 244-245], fns. omitted.)

Under both *Minjares* and *Sanders,* respondent must show not only that probable cause existed for the search of the boxes in this case, but also that exigent circumstances dictated an immediate search without a warrant. ■ Finally, *Sanders* makes it clear that because a search takes place in the field rather than at the stationhouse does not eliminate the need for a warrant. (See also *United States* v. *Johnson* (5th Cir. 1979) 588 F.2d 147, 151; *United States* v. *Stevie* (8th Cir. 1978) 582 F.2d 1175, 1179-1180.)

■ Here, the boxes were discovered in the trunk after appellant and his passenger had been handcuffed and placed under arrest. At that time, four highway patrolmen and four highway patrol cars were on the scene. The boxes were not accessible to appellant or his passenger. At all times after the discovery of the closed boxes, they were under the exclusive control of the officers. Therefore, under *Chadwick* the search cannot be characterized as incident to the arrest. (433 U.S. at p. 15 [53 L.Ed.2d at pp. 550-551].) Further, the fact that the boxes were found in the trunk of an automobile after the officers legitimately opened the car's trunk cannot validate their later being searched. (*People* v. *Minjares, supra,* 24 Cal.3d at p. 423.)

In the present case, there were no exigent circumstances that would have dictated an immediate search of the boxes. Appellant and his passenger were safely under arrest. The two metal boxes were closed, and anything that might have been inside was well out of the reach of the handcuffed suspects. Even though no decision had been made as to whether the car should be impounded or towed, the boxes themselves could have been safely transported to the police station. No fears for the officers' safety or threat of destruction of evidence dictated an immediate search. (See *People* v. *Koehn* (1972) 25 Cal.App.3d 799, 805 [102 Cal.Rptr. 102].) Further, it was midafternoon on a weekday and a magistrate would have been easily accessible only a short distance away at the Hall of Justice. Since there was no necessity to immediately search the boxes without a warrant, the search which followed was invalid under *Chadwick, Sanders* and *Minjares.*

Respondent further contends that notwithstanding the failure of the officers to articulate the premise at the preliminary hearing, the officer's

belief that the car might be stolen provided a legitimate basis for a warrantless search. He argues that officers may properly search a stolen car, and that this search extends to any and all locked containers within that car.

Respondent contends that the officer's belief that a car is stolen provides probable cause to search it under the "automobile" exception of *Chambers* v. *Maroney* (1970) 399 U.S. 42, 48-49 [26 L.Ed.2d 419, 426-427, 90 S.Ct. 1975]. This argument misses the point. The suspicion that an automobile may be stolen goes to the issue of the validity of a warrantless search of the automobile itself. Appellant is contesting the *search of the boxes,* not the search of the car. Respondent has never contended that the boxes were stolen, and the officers never testified they had cause to believe they were stolen.

In searching the boxes, the officers testified they were initially looking for appellant's property. Even if the automobile itself could be searched without a warrant under the "automobile" exception, the warrantless search of the boxes must still be justified by some further exigency. (*Arkansas* v. *Sanders, supra,* —U.S. at p. — [61 L.Ed.2d pp. 244-245]; *United States* v. *Johnson, supra,* 588 F.2d at p. 151; *United States* v. *Stevie, supra,* 582 F.2d at pp. 1179-1180.) The belief that the automobile may be stolen provided no exigency dictating an immediate search of the boxes, particularly when the driver was under arrest. If the officers had reason to believe that there was evidence or contraband in the locked containers, the question of probable cause should have been submitted to a magistrate.

Respondent also contends that one who has stolen an automobile may not contest the search of the automobile or of containers found within because he can have no privacy interest in the stolen vehicle. Again respondent misses the point. Even if appellant had no protectible interest in the car, he clearly had a reasonable expectation of privacy in the contents of the boxes. (*United States* v. *Chadwick, supra,* 433 U.S. at p. 11 [53 L.Ed.2d at p. 548].) The officers never testified they believed the boxes were stolen. Therefore, appellant could properly contest the search of the boxes.[2] (Cf. *Arkansas* v. *Sanders, supra,* —U.S. at p. —, fn. 8 [61 L.Ed.2d at p. 243, fn. 8].)

---

[2]Respondent's argument is circular. First, he contends that the car could be searched because appellant had no privacy interest in it. Then he contends that appellant could have no privacy interest in the car because it would ultimately be searched if he were caught.

A second variant of this argument is similarly flawed. It is contended that appellant may not contest the search of the car under the vicarious exclusionary rule because no interest of the owner of the vehicle was violated. (See *People v. Solario* (1977) 19 Cal.3d 760, 764 [139 Cal.Rptr. 725, 566 P.2d 627].) Once again it should be pointed out that appellant is contesting the warrantless search of the boxes, not of the car. He never disclaimed any interest in the boxes. Thus, the search of the boxes does not involve the vicarious exclusionary rule. (See *People v. Martin* (1955) 45 Cal.2d 755, 759-761 [290 P.2d 855]; *Kaplan v. Superior Court* (1971) 6 Cal.3d 150, 155 [98 Cal.Rptr. 649, 491 P.2d 1].)

It cannot be assumed that the owner of the vehicle has no personal effects in the car to which a Fourth Amendment claim might be raised. Although officers are authorized to remove a stolen vehicle from the road and to store it (Veh. Code, §§ 22651, subd. (c), 22850), the removal and storage provisions do not authorize a warrantless search of the contents of the vehicle. (*Mozzetti v. Superior Court* (1971) 4 Cal.3d 699, 707 [94 Cal.Rptr. 412, 484 P.2d 84].) Any interest of the owner of the car in possessions left in the car may be adequately protected by noting the presence of any closed containers and removing them for safekeeping or rolling up the windows of the car and locking the doors. (*Id.,* at pp. 707-712.)

If respondent is contending that anyone who places personal effects in an automobile that is stolen has somehow waived his right of privacy in their contents, he has failed to read *Mincey v. Arizona, supra,* 437 U.S. at page 391 [57 L.Ed.2d at p. 299]. In that case the Supreme Court rejected a similar contention that Mincey had forfeited any reasonable expectation of privacy in his apartment by committing a homicide inside. The high court noted that "this reasoning would impermissibly convict the suspect even before the evidence against him was gathered." In the present case, the officers were not certain appellant had stolen the Cadillac at the time the boxes were searched. Probable cause is needed for an arrest. However, respondent's argument justifies the search not by the officers' belief at the time, but by the fact of appellant's subsequent conviction. In rejecting a similar argument in *Michigan v. Tyler* (1978) 436 U.S. 499, 506 [56 L.Ed.2d 486, 496, 98 S.Ct. 1942], the Supreme Court noted that "a conviction cannot be used *ex post facto* to validate the introduction of evidence used to secure that same conviction." Therefore, the fact that the automobile was suspected to have been stolen cannot validate the search of the boxes.

■ Accordingly, this court holds that in the absence of exigent circumstances which require an immediate search, probable cause furnishes sufficient grounds only for a warrantless seizure and immobilization of the closed containers pending the issuance of a search warrant. (See *United States* v. *Chadwick, supra,* 433 U.S. at p. 15 [53 L.Ed.2d at pp. 550-551], and *Arkansas* v. *Sanders, supra,* —U.S. at p. —[61 L.Ed.2d at pp. 243-246].)

■ The warrant requirement is not an empty formality. It is the cornerstone of the Fourth Amendment's guarantee of the right to privacy. The assurance that a determination of probable cause will be made by a neutral and detached magistrate, rather than an officer under stress in the field is not a minor guarantee. (*Johnson* v. *United States* (1948) 333 U.S. 10, 13-14 [92 L.Ed. 436, 439-440, 68 S.Ct. 367].) The authority of the executing officer and his need to search are carefully reviewed. (*United States* v. *Chadwick, supra,* 433 U.S. at p. 9 [53 L.Ed.2d at p. 547].) Limits are imposed on the search through the requirement of particularity. (*Ibid.*) And the factual basis on which the affiant is justifying the search is made in advance of the search itself. This ensures that a search will not be impermissibly justified by what it turns up. (See White, *The Fourth Amendment as a Way of Talking About People: A Study of Robinson and Matlock* (1974) Sup.Ct.Rev. 165, 181, fn. 34.) These important protections would be undermined by the adoption of a rule that would encourage officers to conduct a search at the time of the seizure of personal effects, rather than requiring them to obtain a warrant. (See *United States* v. *Schleis* (8th Cir. 1978) 582 F.2d 1166, 1172; *United States* v. *Johnson, supra,* 588 F.2d at p. 151.)

Since the officers failed to obtain a warrant to search the closed boxes found in the trunk of the car, appellant's motion to suppress the evidence found in the boxes should have been granted. Accordingly, appellant should be allowed the election of standing on his guilty pleas or withdrawing the pleas and awaiting a refiling by the prosecutor of those charges which can be supported by admissible evidence. (See *People* v. *Hill* (1974) 12 Cal.3d 731, 767-770 [117 Cal.Rptr. 393, 528 P.2d 1].) The trial court is directed that upon any appropriate motion filed by appellant within 30 days after this decision becomes final, it should vacate the guilty pleas entered by appellant and reinstate those charges requested by the prosecutor. If no such motion is filed by appellant, the trial court is directed to reinstate the original judgments. (*Id.,* at pp. 769-770.)

Tobriner, J., Mosk, J., Richardson, J., Manuel, J., and Newman, J., concurred.

**CLARK, J.**—I concur under the compulsion of *Arkansas* v. *Sanders* (1979) —U.S.—[61 L.Ed.2d 235, 99 S.Ct. 2586].